UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MAJA MCDONALD,<br>        Plaintiff<br><br>    v.<br><br>LOUIS DEJOY, United States<br>Postmaster General,<br>        Defendant | No. 22 CV 7314<br><br>Judge Jeremy C. Daniel |

**MEMORANDUM OPINION AND ORDER**

*Pro se* Plaintiff Maja McDonald, a United States Postal Service ("USPS") employee, filed this action against United States Postmaster General Louis DeJoy alleging that the Postmaster General violated her Constitutional rights by conspiring to engage in excessive force, arresting or seizing her without probable cause, and denying her workers' compensation and other benefits. (*See* R. 8 ("Compl.").) McDonald also claims that USPS employees discriminated against and harassed her. (R. 44.) The Postmaster General now moves to dismiss the complaint in its entirety under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that McDonald's claims are barred by sovereign immunity and otherwise fail to state a claim on which relief can be granted. (R. 17.) For the reasons that follow, the Court grants the defendant's motion.

**BACKGROUND**

McDonald alleges that, since 2018, USPS management withheld career advancement opportunities, cheated her out of guaranteed hours by giving her false

leave and return times, and did not provide correct information regarding her entitlement to workers' compensation benefits and health insurance. (Compl. at 4 ¶ 1.) McDonald also alleges that USPS management retaliated against her with "daily harassment" which eventually led to her being removed from her position in 2019. (*Id.* at 5 ¶ 4.) She does not specify the nature of the harassment. (*Id.*) Despite her removal, McDonald alleges that she remained employed with USPS as a career employee in 2020. (*See id.*) She claims that she was not awarded backpay in settlement of her prior termination, placed on false "Emergency Placements," refused overtime pay related to COVID-19, and denied guaranteed hours. (*Id.* at 5 ¶ 6; 6 ¶¶ 8–9.) The complaint does not indicate the basis for McDonald's entitlement to these benefits, or explain why the agency denied them.

Beginning in 2020, McDonald also alleges that she was involved in several physical altercations with USPS coworkers and local police. First, in June 2020, USPS managers summoned police officers to the USPS facility where McDonald worked to issue her a traffic ticket. (*Id.* at 5 ¶ 6; R. 44 at 3.) A few months later, on October 20, 2020, USPS managers directed police to remove McDonald from the facility as an "unwanted trespasser" for being "possibly injurious to herself and others." (Compl. at 6 ¶ 7; R. 44.) McDonald alleges that USPS had "cut . . . off" her hours based on outdated medical restrictions, and that she was put on "emergency placement" following this incident. (Compl. at 10 ¶ 11.) Two days later, on October 22, 2020, a physical altercation occurred between McDonald and a coworker during which the coworker allegedly threw a cup of coffee in McDonald's face. (*Id.* at 11 ¶ 12.)

2

McDonald alleges that the police later arrived on the scene, and USPS managers lied to the police about the "violence they witnessed." (*Id.* at 12, ¶ 13.)

McDonald further alleges that USPS managers "never informed [USPS] inspectors about the assaults or violence o[r] threats to [her] life by the same coworker." (*Id.* at 11 ¶ 12.) She alleges that the coworker assaulted her again in June 2021 but provides no further detail. (*Id.*) She also alleges that she was forced to relocate to a different USPS office that same year. (*Id.* at 12 ¶ 14.) Finally, McDonald asserts that, on an unspecified date, a female USPS supervisor entered the women's bathroom at the USPS facility and "peep[ed] into the woman's stall while [she] was using it" because a manager had "told her to look for" McDonald. (*Id.* at 5 ¶ 5.)

McDonald sued the Postmaster General, asserting a variety of claims under federal and state law. (*See id.*) She asks for compensatory and punitive damages as renumeration for her injuries. (*Id.* at 22.) The Postmaster General now moves to dismiss the complaint in its entirety under Rules 12(b)(1) and 12(b)(6). (R. 17.)

**LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a) requires a complaint to provide a short and plain statement of the grounds for the court's jurisdiction and a short and plain statement of the claim showing that the pleader is entitled to relief. Fed R. Civ. P. 8(a)(1), (2); *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012). "Although 'district courts have a special responsibility to construe *pro se* complaints liberally,' *pro se* litigants are not exempt from Rule 8's requirements. *Leveston v. Moynihan*, No. 17 C 4934, 2017 WL 7693398, at *1 (N.D. Ill. July 13, 2017) (quoting *Kaba v. Stepp*, 458 F.3d 678, 687 (7th Cir. 2006)).

3

A motion to dismiss under Rule 12(b)(1) tests the Court's subject-matter jurisdiction. When faced with a 12(b)(1) motion, the plaintiff "bears the burden of establishing that the jurisdictional requirements have been met." *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014); *Transit Exp., Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001). In the case of a facial challenge to subject matter jurisdiction, the Court must accept well-pleaded factual allegations as true and construe them in the light most favorable to the plaintiff. *Lee v. City of Chi.*, 330 F.3d 456, 468 (7th Cir. 2003).

To survive a Rule 12(b)(6) motion, a complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Kaminski v. Elite Staffing, Inc.* 23 F.4th 774, 776 (7th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.. Though "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). As with facial challenges to subject matter jurisdiction, the Court accepts well-pleaded factual allegations as true and draws all inferences in favor of the nonmoving party. *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

4

## ANALYSIS

As an initial matter, the Postmaster General argues that McDonald's claims are barred by the doctrine of sovereign immunity. (R. 18 at 5.) A suit against the Postmaster General in his official capacity is a suit against the United States. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). And "[s]overeign immunity shields the United States from suit absent a consent to be sued that is unequivocally expressed." *United States v. Bormes*, 568 U.S. 6, 9–10 (2012).

The Postmaster General assumes that he has been sued in his official capacity despite McDonald's complaint being silent on this question. He cites *Demario v. Quintos* for the proposition that when a complaint does not specify the capacity in which the plaintiff is suing a government official, the court must presume that claims are brought against the individual in his official capacity. *See* No. 89 C 6490, 1990 WL 37724, at *1 (N.D. Ill. Mar. 22, 1990); *see also Kolar v. Cnty. of Sangamon*, 756 F.2d 564 (7th Cir. 1985). But the Seventh Circuit has since expounded a "new regime" under which an official-capacity suit is presumed only when a plaintiff "seeks injunctive relief from official policies or customs." *Miller v. Smith*, 220 F.3d 491, 494 (7th Cir. 2000). By contrast, "where the plaintiff alleges tortious conduct of an individual acting under color of state law, the defendant has been sued in her individual capacity." *Id.* (citation omitted).

Although McDonald references unspecified USPS "policies" and "regulations," her complaint consists largely of common law tort theories. Moreover, McDonald states that she is exclusively seeking monetary damages for her injuries—including punitive damages—and not injunctive relief. (Compl. at 22.) The fact that McDonald

5

is seeking punitive damages supports an inference that she is proceeding against the Postmaster General in his personal capacity, since a plaintiff is barred from recovering punitive damages in an official capacity suit. *Hill v. Shelander*, 924 F.2d 1370, 1373 (7th Cir. 1991). In light of the foregoing, the Court cannot presume that McDonald's suit is against the Postmaster General in his official capacity. *See Miller*, 220 F.3d at 494. Because McDonald's intentions are unclear, the Court examines whether the pleadings are sufficient to state both personal capacity and official capacity claims. *See, e.g.*, *Johnson v. Chi. Transit Auth.*, No. 14 C 9432, 2015 WL 5016482, at *4 (N.D. Ill. Aug. 24, 2015).

### I. MCDONALD'S TORT CLAIMS

The Court begins with McDonald's tort claims. If a federal officer like the Postmaster General commits a tort, the victim may pursue either a constitutional tort claim under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971), or a common law tort claim consistent with the limitations of the Federal Tort Claims Act ("FTCA"). *Manning v. United States*, 546 F.3d 430, 431 (7th Cir. 2008) (citing 28 U.S.C. §§ 1346, 2671–80). Since the complaint raises both constitutional and state law theories, the Court addresses both.

#### A. *Bivens* Claims

First, the complaint alleges that USPS employees violated McDonald's constitutional rights. To the extent that these allegations purport to state a personal-capacity *Bivens* claims against the Postmaster General, they fail due to the absence of allegations of personal involvement. A *Bivens* claim can only be brought against an individual official for his or her own acts, and not for the acts of others. *Ziglar v.*

6

*Abbasi*, 137 S. Ct. 1843, 1860 (2017); *Iqbal,* 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*[.]"). McDonald has alleged no facts from which the Court can infer that the Postmaster General—the head of USPS and the supervisor of all USPS employees throughout the United States—was personally involved in of the unconstitutional acts alleged here.

Insofar as McDonald asserts an official-capacity *Bivens* claim against the Postmaster General, such a claim is barred by sovereign immunity. A complaint must "identify a waiver of sovereign immunity in order to recover monetary damages." *McAlister v. Potter*, 843 F. Supp. 117, 122 (D.D.C. 2012). To determine whether the United States has waived sovereign immunity with respect to a particular claim, courts refer to the provisions of the FTCA as interpreted by the Supreme Court. *See, e.g.*, *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 34 (1992). Purported waivers must be "strictly construed, in terms of [their] scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996). The Supreme Court has expressly held that there is no waiver of sovereign immunity for *Bivens* claims against federal agencies. *F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994). Any official capacity *Bivens* claims against the Postmaster General are therefore barred.

### B. Common Law Tort Claims

Next, the Court tackles McDonald's common law tort claims for false arrest, assault, battery, false imprisonment, malicious prosecution, and conspiracy. These claims are also insufficiently pled. McDonald's allegations describe a variety of unlawful actions taken by management-level USPS employees at a single USPS

facility in Evanston, Illinois. To the extent that McDonald purports to assert a claim against the Postmaster General in his personal capacity (outside the scope of his employment), she alleges no facts indicating that the defendant was involved in or even had knowledge of the allegedly illegal actions. And without some level of factual specificity to make her claims plausible, they do not pass muster under Rule 12(b)(6). *Twombly*, 550 U.S. at 555.

McDonald's official capacity claims are also barred by sovereign immunity. "The remedy provided by the FTCA is the 'exclusive' basis for a common law tort claim against an officer or employee of the federal government 'while acting within the scope of his office or employment.'" *See Beaulieu v. Ashford Univ.*, 529 F. Supp. 3d 834, 848 (N.D. Ill. 2021) (citations omitted). The FTCA's "intentional tort exception" provides that the United States is immune from suit for "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." *Millbrook v. United States*, 569 U.S. 50, 52 (2013) (quoting 28 U.S.C. § 2674(h)); *see also, e.g.*, *Borawski v. Henderson*, 265 F. Supp. 2d 475, 484 (D.N.J. 2003) (applying intentional tort exception to claims against the Postmaster General). Because McDonald's common law tort claims fall squarely within this exception, she cannot pursue a suit for damages against the United States.

## II. WORKERS' COMPENSATION CLAIMS

The Court next addresses McDonald's claims related to workers' compensation. The Court is aware of no authority permitting a postal employee to bring claims based on the denial of workers' compensation against the Postmaster General in his

8

personal capacity. Even if such a claim existed, it would fail due to lack of factual specificity. *Twombly*, 550 U.S. at 555.

That leaves McDonald's official-capacity workers' compensation claims. These claims are subject to the Federal Employees Compensation Act ("FECA"), which is the exclusive means by which the United States waives sovereign immunity "with respect to claims by its employees for compensation for injuries sustained on the job." *Czerkies v. U.S. Dept. of Lab.*, 73 F.3d 1435, 1437 (7th Cir. 1996) (*en banc*). FECA provides that "[t]he action of the Secretary [of Labor] or his designee in allowing or denying a payment under this subchapter" is "not subject to review . . . by a Court by mandamus or otherwise." 5 U.S.C. § 8128(b); *see also Fuqua v. United States Postal Serv.*, 956 F.3d 961, 964 (7th Cir. 2020) (holding that the provisions of FECA "are intended to be the exclusive remedy of the injured employee.").

McDonald alleges simply that the USPS did not "provide correct care and information" regarding her entitlement to workers' compensation following her injuries. (Compl. at 4 ¶ 1.) This allegation is, at its core, a complaint about the agency's error in handling her benefits. Such allegations are insufficient to establish a basis for judicial review. *See Czerkies*, 73 F.3d at 1437–43 ("When all that a claimant is seeking is benefits on the basis of an error of fact or law by the administering agency, judicial review is barred altogether."); *Kyle v. Brennan*, No. 17 C 5257, 2018 WL 3218447, at *2 (N.D. Ill. July 2, 2018) (collecting cases). The Court lacks subject matter jurisdiction to address purported errors with respect to McDonald's workers' compensation and benefits.

### III. CAREER ADVANCEMENT CLAIMS

Next, the Court addresses McDonald's allegations related to denial of career advancement opportunities and/or adverse personnel actions. Absent a collective bargaining agreement or other established procedures, the sole remedy for USPS employees to challenge adverse employment decisions is through administrative proceedings pursuant to the Civil Service Reform Act ("CSRA"). 39 U.S.C. § 1005(a)(1); 5 U.S.C. § 2301 *et seq.*; *see also Fuqua*, 956 F.3d at 965–66 ("The Postal Reorganization Act . . . provides that the [CSRA], relating to adverse employment actions, applies to postal service employees.")

The CSRA sets forth "a comprehensive framework for handling the complaints of civil service employees faced with adverse personnel decisions." *Ayrault v. Pena*, 60 F.3d 346, 347 (7th Cir. 1995). Under the CSRA, the Merit Systems Protection Board ("MSPB") and the Federal Circuit are solely responsible for interpreting the CSRA, and an employee who "wishes to complain of an adverse personnel decision must first appeal to the MSPB." *Id.* at 348. "By creating the CSRA, Congress implicitly repealed the jurisdiction of federal district courts over personnel actions arising out of federal employment." *Richards v. Kiernan*, 461 F.3d 880, 883 (7th Cir. 2006) (citing *Paige v. Cisneros*, 91 F.3d 40, 43 (7th Cir. 1996)). This Court has no authority to "supplement the comprehensive procedural and substantive remedies provided to federal employees under the CSRA." *Id.* at 886.

McDonald fails to address, and thereby concedes, her noncompliance with CSRA's exhaustion requirements. (*See generally* R. 44.) She does not reference proceedings in front of the MSPB or allege that she pursued her claims through the

10

CSRA's administrative process. Her failure to do so is fatal to her claims. *See, e.g.*, *Ruben v. Potter*, No. 06 C 2441, 2007 WL 2875674, at *4 (N.D. Ill. Sept. 28, 2007) (dismissing claims against Postmaster General due to failure to allege compliance with CSRA's jurisdictional framework); *Rogers v. United States*, No. 03 C 3645, 2003 WL 22849148, at *2 (N.D. Ill. Dec. 1, 2003) (holding that the plaintiff's failure to allege or argue in response to the motion to dismiss that she made any attempt to exhaust any administrative remedies doomed her CSRA claims).

Because McDonald has not alleged sufficient facts to satisfy the CSRA's jurisdictional prerequisites, the Court dismisses her adverse personnel action claims under Rule 12(b)(6). *See Richards*, 461 F.3d at 886 (holding that Rule 12(b)(6) and not Rule 12(b)(1) is the appropriate avenue for dismissing claims due to failure to comply with CSRA's exhaustion requirement).

### IV.   TITLE VII CLAIMS

Finally, the Court considers whether McDonald's allegations of harassment and retaliation are sufficient to state a claim for discrimination under Title VII. McDonald claims that she was harassed by USPS managers but provides no detail in describing the basis or nature of the harassment. In her response brief, she references filing complaints and receiving a notice of right to sue from the EEO in November 2022. (R. 44 at 2.) She further claims that USPS "discriminated against [her] with retaliation" by reporting her as an unwanted trespasser, failing to intervene to prevent her coworker from assaulting her, committing "time clock fraud," and "refusing to open an IMIP report." (*Id.* at 3.)

11

Although McDonald may elaborate upon her allegations in response to a motion to dismiss, *Heng v. Heavner, Beyers & Mihlar, LLC*, 849 F.3d 348, 354 (7th Cir. 2017), her allegations are still too threadbare to state a claim. A claim for hostile work environment under Title VII requires a plaintiff to allege that (1) she was subject to unwelcome harassment; (2) the harassment was based on a reason forbidden by Title VII (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is basis for employer liability. *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 833–34 (7th Cir. 2015) (citation omitted). Putting aside the third and first elements, the complaint contains no allegations indicating that McDonald was a member of a protected class under Title VII, or that the harassment occurred because of a reason prohibited by the statute. In other words, McDonald fails to identify "the type of discrimination that she thinks occur[ed]." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010).

McDonald's Title VII retaliation claim is similarly deficient. "To state a claim for retaliation under Title VII, a plaintiff must allege that he engaged in statutorily protected activity and suffered an adverse action as a result of that activity." *Alamo v. Bliss*, 864 F.3d 541, 555 (7th Cir. 2017); *Coleman v. Donahoe*, 667 F.3d 835, 859–862 (7th Cir. 2012). Although McDonald identifies a number of conceivably adverse actions in her response brief, she does not identify a statutorily protected activity that she participated in or allege a causal relationship between that activity and USPS'

12

actions. Accordingly, the Court grants the Postmaster General's motion to dismiss McDonald's Title VII claims under Rule 12(b)(6)

## CONCLUSION

The defendant's motion to dismiss, R. 17, is granted. The Court concludes that all of McDonald's claims are either barred by Federal Rule of Civil Procedure 12(b)(1) or fail to state a claim under Rule 12(b)(6). The plaintiff may file, by no later than May 21, 2024, a proposed amended complaint that states at least one federal claim. Failure to do so will result in this case being terminated. It is so ordered.

Date: 4/30/2024

JEREMY C. DANIEL
United States District Judge